## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | **Chapter 7** |
| **NATHAN A. FULLER AND PRIVVY** | § | |
| **INVESTMENTS, LLC,**[1] | § | **Case No. 24-34773 (JPN)** |
| | § | |
| Debtor. | § | **(Jointly Administered)** |
| | § | |
| **RONALD J. SOMMERS** | § | |
| **CHAPTER 7 TRUSTEE,** | § | |
| | § | |
| **Plaintiff,** | § | **Adv. No. 24-_____** |
| | § | |
| **vs.** | § | |
| | § | |
| **ASHLEY R. FULLER,** | § | |
| | § | |
| Defendant. | § | |

## COMPLAINT

Ronald J. Sommers ("<u>Trustee</u>"), chapter 7 trustee for the estate of Privvy Investments, LLC (the "<u>Debtor</u>"), files this original complaint against Ashley R. Fuller (the "<u>Defendant</u>").

### Parties

1.      The Trustee may be served in this adversary through the undersigned counsel.

2.      Ashley R. Fuller is a resident of Harris County, Texas, and may be served at her residence at 15518 Kerrville Court, Cypress, TX 77429.

### Jurisdiction and Venue

3.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  Relief is sought pursuant to 11 U.S.C. §§ 544, 548 and 550, Tex. Bus. & Comm. Code Ann. § 24.001 *et seq*. and other applicable law.

---

[1] The Debtors in these chapter 11 cases are Nathan A. Fuller and Privvy Investments LLC (EIN 92-1827837).

4.      This adversary is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (H), and (O).  The Trustee consents to the entry of final orders or judgment by the bankruptcy judge if it is determined that the bankruptcy judge, absent consent of the parties, cannot enter final orders or judgment consistent with Article III of the United States Constitution.

5.       Venue is proper in this district pursuant to 28 U.S.C. § 1409(a).

**SUMMARY OF THE TRUSTEE'S COMPLAINT**

6.      Pursuant to 11 U.S.C. §§ 544, 548 and 550, Tex. Bus. & Com. Code Ann. § 24.001 *et seq*. and other applicable law, the Trustee seeks to recover real property purchased by the Defendant using the Debtor's cash as both an actual and constructive fraudulent transfer and to have title of the property conveyed to the Privvy Investments, LLC estate so that it may be liquidated by the Trustee for the benefit of creditors.

7.      The Trustee also seeks his attorneys' fees, costs and interest in accordance with applicable law.

**STATEMENT OF RELEVANT FACTS**

**A.  The Bankruptcy Cases**

8.      On October 10, 2024, Nathan Fuller filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code.  *See* Case No. 24-34773.  The Trustee was duly appointed as the chapter 7 trustee in Nathan Fuller's bankruptcy case.

9.      Nathan Fuller listed his home address as 15518 Kerrville Court, Cypress, Texas 77429 (the "Kerrville House") in his chapter 7 petition.

10.      Nathan Fuller owned 100% of Privvy Investments, LLC ("Privvy").

11.      On November 12, 2024, the Court entered the Order Authorizing the Trustee to Exercise Debtor's Rights as Sole Member of Privvy Investments, LLC.

12.     On November 13, 2024, pursuant to the authority granted by the Court, the Trustee filed a voluntary chapter 7 petition for Privvy.  *See* Case No. 24-35346. The Trustee was duly appointed as the chapter 7 trustee in Privvy's bankruptcy case.

13.     On November 15, 2024, the Court entered an order jointly administering the chapter 7 cases under the Nathan Fuller case number.

### B.  The Defendant's Relationship to the Debtors

14.     The Defendant and Nathan Fuller were legally married until May 26, 2017.  At the time of their divorce, they had one child.

15.     After their divorce, the Defendant and Nathan Fuller conceived another child and continue to cohabitate up to the present date.

16.     After their divorce, the Defendant and Nathan Fuller continued to hold themselves out to friends, neighbors and business connections as husband and wife.

17.     From approximately February 2018 until September 2023, the Defendant and Nathan Fuller lived together, with their children, at 18138 Calcaterra Court, Cypress, Texas 77429 (the "Calcaterra House").

18.     During the Section 341 meeting of creditors in his individual case, Nathan Fuller testified that for more than a year neither he nor Privvy had a bank account, and the only bank account that he and the Defendant used was in the Defendant's name.

### C.  The Transfer to Facilitate the Purchase of the Kerrville House

19.     On October 12, 2023, Nathan Fuller obtained a check from a Privvy bank account at Truist Bank in the amount of $999,798.28, payable to Alamo Title Company with the address of the Kerrville House listed on the memo line (the "Transfer").

20.     The Transfer cleared the Truist bank account ending in -4498 the same day.

21.     The Transfer was used to purchase the Kerrville House.

22.     The title to the Kerrville House is held solely in the Defendant's name.

23.     According to the real property records of Harris County, there is no mortgage on the Kerrville House.

24.     Upon information and belief, the amount of the Transfer constituted the entire purchase price for the Kerrville House.

25.     Privvy received no value in exchange for the Transfer.

26.     The Defendant, Nathan Fuller and their children have resided at the Kerrville House since it was purchased.  The Defendant still owns the Calcaterra House.  According to Nathan Fuller's testimony, the Calcaterra House is vacant.  The Harris County Tax Assessor-Collector website still shows the Calcaterra House as the Defendant's homestead.

27.     During the Section 341 meeting of creditors in his individual case, Nathan Fuller falsely denied the existence of the Truist account, falsely alleged that no Privvy funds had been used to purchase the Kerrville House, and falsely claimed he had contributed $100,000-$200,000 from a personal account to help the Defendant purchase the Kerrville House with the Defendant providing the remainder of the purchase price from her separate account.

**D. Privvy Investments Fraud and Insolvency**

28.     Nathan Fuller began using Privvy Investments as his d/b/a in mid-2022 and incorporated Privvy as a legal entity in Wyoming about one year later.

29.     Nathan Fuller holds no certifications or licenses related to financial investments. He is not a registered investment advisor and is not a registered broker.

30.     Nathan Fuller allegedly developed a software program that would identify arbitrage opportunities in the cryptocurrency market across different exchanges and automatically execute trades at a high speed and volume.

31.     Nathan Fuller initially solicited investments to Privvy through friends, family, and neighbors.  Later, Privvy would pay certain investors "referral fees" for getting new investors to sign up.  A number of these parties, referred to by Nathan Fuller as "affiliates," received referral fees totaling hundreds of thousands of dollars.

32.     The pitch materials provided to investors state that Privvy could "consistently" average daily returns of 1.25% and there was a "75% success at doubling principle investment within first 60 days."

33.     Privvy typically entered into an agreement with an investor pursuant to which Privvy would receive 10% of funds withdrawn and distributed to that investor.

34.     After executing the agreement, investors were given directions to transfer funds to a Privvy account.  Investors transferred funds to accounts at a variety of banks and also transferred funds to relatives of Nathan Fuller.

35.     Contrary to Nathan Fuller's testimony at the Section 341 meeting of creditors, the Defendant was involved in the Privvy business.  As an example, at least one investor wired its investment funds directly to the Defendant using Venmo.

36.     Once funds were received, investors could use the Privvy application, created by Nathan Fuller and owned by Privvy, that would track their investment and show their account balance.

37.     Nathan Fuller testified in a prepetition deposition that Privvy was averaging returns of .73% per day from inception through October 2023 at which point it stopped making trades.

38.     At least as early as May 2023, Privvy stopped honoring investors' requests to withdraw funds.

39.     Thereafter, Privvy gave multiple excuses to investors for why they could not withdraw funds, including know-your-customer issues with crypto exchanges and transition issues with a company called Digital Currency Group.

40.     The plaintiffs in a prepetition lawsuit against the Debtors claim they contacted Digital Currency Group to inquire about their accounts, and Digital Currency Group responded that it had never been in communication with Privvy and that it believed Privvy was committing fraud against it.

41.     Nathan Fuller provided the Trustee with bank statements for a Privvy account and a personal account at Regions Bank for the months of July, August and September 2023.  During his testimony at the Section 341 meeting, Nathan Fuller falsely testified that these were the only bank accounts that he or Privvy had in 2023 and that neither he nor Privvy had an account after these were closed near the end of September 2023.

42.     The transactions in these accounts, during the time period when investors' withdrawal requests were being denied, show a pattern of fraud on the Privvy investors.

43.     The vast majority of investor funds received by Privvy during this period were not transferred to crypto exchanges to be invested.  For example, between July 26, 2023 and July 31, 2023, several Privvy investors deposited a total of $1,420,000.00 to the Privvy account.  If Privvy was legitimately operating as Nathan Fuller had promised investors, there should be $1,420,000.00 transferred from that account to crypto exchanges within two weeks.

44.     Instead, on July 26, 2023 and July 28, 2023, Privvy wired a total of $800,000.00 to the Defendant and, on July 31, 2023, Privvy transferred $203,359.78 to Alamo Title.  Ashley Fuller retuned $750,000 in two transfers on August 3, 2023 and August 9, 2023, and Alamo Title returned 100% of the funds it received on August 29, 2023.  These transfers may have been related to the purchase of the Kerrville Property or other property.

45.     During the time period when the $1,420,000.00 of investor funds should have been invested (July 26, 2023 through August 16, 2023), the Privvy account reflects the following withdrawals and charges:

    a.   Transfers of funds to crypto exchanges totaling $4,490.00:

        i.   August 14, 2023 - $1,990.00 to Kraken

        ii.  August 15, 2023 - $2,500.00 to Kraken

    b.   Transfers to Nathan Fuller's personal account totaling $255,000.00:

        i.    July 26, 2023 - $25,000.00

        ii.   July 31, 2023 - $5,000.00

        iii.  August 1, 2023 - $25,000.00

        iv.   August 2, 2023 - $75,000.00

        v.    August 9, 2023 - $25,000.00

        vi.   August 10, 2023 - $100,000.00

    c.   Charges related to gambling trips or other travel:

        i.    July, 31, 2023 - nearly $10,000 in or near the Golden Nugget casino in Lake Charles, LA

        ii.   August 1–3, 2023 -ATM withdrawals at the Wynn casino in Las Vegas

    iii.  On August 3, 2023 - a total of 12 charges at the Venetian casino in Las Vegas totaling approximately $36,000.00.

    iv.  August 4, 2023 - a charge at the Louis Vuitton store in Las Vegas

    v.  August 7, 2023 - a charge at a nightclub in Las Vegas

    vi.  August 7, 2023 - purchase of flights on United Airlines

    vii.  August 14-15, 2023 - numerous charges at the Seminole Hard Rock Hotel & Casino in Tampa totaling more than $60,000.00

d.  Return of funds to other investors totaling $575,000.00:

    i.  August 7, 2023 - $375,000.00 to four investors

    ii.  August 9, 2023 - $100,000.00 to F2 Equities LLC, which was one of the investors contributing a portion of the $1,420,000.00

    iii.  August 11, 2023 - $100,000.00 to JK Capital, which was one of the investors contributing a portion of the $1,420,000.00

e.  Numerous unexplained bank debits in the form of cash withdrawals or cashiers checks totaling $275,040.00:

    i.  July 26, 2023 - $30,000.00

    ii.  July 28, 2023 - $15,000.00

    iii.  July 31, 2023 - $20,000.00 and $75,000.00

    iv.  August 1, 2023 - $70,020.00

    v.  August 7, 2023 – $20,000.00

    vi.  August 8, 2023 - $30,010.00

    vii.  August 9, 2024 - $5,010.00 and $10,000.00

      f.   More than a dozen purchases from a sports cards and memorabilia trading app operated by Loupe Sports in Florida.

      g.   Personal expenses such as gas, pet food, clothing, food delivery, and a charge for $8,000.00 of furniture on July 31, 2023.

46.    Notably, despite there being at least $575,000.00 transferred to Privvy investors, there are no deposits from crypto exchanges during this timeframe. Instead, it appears Privvy used new deposits from investors to make distributions to other investors.

47.    This pattern is repeated with a September 8, 2023 deposit from investor JK Capital Partners in the amount of $525,000.00.  In the two-week period that followed, when those funds should have been invested in crypto exchanges (September 8, 2023 through September 22, 2023), the Privvy account reflects the following withdrawals and charges:

      a.   Transfers of investment funds to crypto exchanges totaling $7,600.00:

           i.   September 14, 2023 - $2,600.00 to Kraken

           ii.   September 22, 2023 - $5,000.00 to Kraken

      b.   Transfers to Nathan Fuller's personal account totaling $171,000.00:

           i.   September 8, 2023 - $100,000.00

           ii.   September 13, 2023 - $20,000.00

           iii.   September 18, 2023 - $5,000.00

           iv.   September 18, 2023 - $21,000.00

           v.   September 18, 2023 - $25,000.00

      c.   Charges related to gambling trips or other travel:

           i.   September 8 and 11, 2023 - purchases of flights on United Airlines.

    ii.   September 8 and 13, 2023 - ATM withdrawal and a purchase at the Wynn casino in Las Vegas.

    iii.  September 11, 2023, nine charges at the Cosmopolitan casino in Las Vegas totaling more than $65,000.00.

    iv.  September 18, 2023, purchase of flights on Delta Airlines, American Airlines, and the travel website Expedia.com.

    v.   September 18, 2023, purchase at a restaurant in Las Vegas.

    vi.  September 20, 2023, purchase of flights on United Airlines and charges to the travel website Expedia.com.

d.  Return of funds to other investors

    i.   September 11, 2023, $85,000.00 in two transfers to investors.

e.  Numerous unexplained bank debits in the form of cash withdrawals or cashiers checks totaling $214,388.83:

    i.   September 11, 2023 - $72,020.00

    ii.   September 12, 2023 - $23,010.00

    iii.  September 14, 2023 - $74,328.83

    iv.  September 18, 2023 - $6,000.00

    v.   September 18, 2023 - $10,000.00

    vi.  September 18, 2023 - $11,010.00

    vii.  September 18, 2023 - $18,020.00

f.  Personal expenses such as gas, groceries, food delivery, and the Nordstrom department store.

48.     From over $1.9 million of investor funds discussed above, it appears that $12,090.00 is the most that was transferred to crypto exchanges to be invested.

49.     Privvy's Regions Bank account was closed on September 28, 2023.

50.     The Truist account used to make the Transfer was opened on September 20, 2023 and was overdrawn by October 25, 2023. The Truist bank account used to make the Transfer contains a similar pattern of charges for gambling, travel, luxury purchases from Gucci and Louis Vuitton, as well as sports cards and memorabilia.

51.     Despite over $1.9 million of deposits to the account in this approximately one-month period, the account shows only a few transfers to the crypto exchange Simplex for approximately $23,607.00.

52.     In the three examples discussed above in the period leading up to and including the Transfer, Privvy accepted over $3.8 million of investor funds of which approximately $36,000.00 can be traced to actual transfers to crypto exchanges to be invested.  The remaining funds were used to fund Nathan Fuller's extravagant lifestyle and gambling habits, provide distributions to prior investors, and to purchase the Kerrville House.

53.     On October 24, 2023, just twelve days after the Transfer, Privvy sent investors an email claiming that all withdrawals would be frozen for 90 days due to an alleged merger of its liquidity provider with Digital Capital Partners.

54.     On October 30, 2023, a class action lawsuit was filed against the Debtors in Harris County alleging, among other things, that Privvy was a Ponzi scheme.

55.     During a deposition in that class-action lawsuit, Ashley Fuller initially admitted that Privvy Investments "partially" provided the funds to purchase the Kerrville House before immediately changing her answer to say that the funds came from Nathan Fuller.

56.     On May 22, 2024, Nathan Fuller sent an email to the Privvy investors stating his intention to close Privvy and liquidate its portfolio.

57.     Nathan Fuller asserts in his schedules that a state-court appointed receiver is in possession of crypto assets worth over $150 million.

58.     The receiver is not in possession of any crypto currency but rather a token that does not appear to have an active trading market or any intrinsic value.

59.     Nathan Fuller was not able to explain the value of the token during his meeting of creditors.

### ACTUAL FRAUDULENT TRANSFER UNDER 11 U.S.C. § 548(a)(1)(A)

60.     The Trustee incorporates paragraphs 1 through 59 as if set forth fully herein.

61.     The Transfer is avoidable as an actual fraudulent transfer under 11 U.S.C. § 548(a)(1)(A).

62.     The Debtor made the Transfer with actual intent to hinder, delay, or defraud creditors.

63.     The Transfer was a transfer of interest in property owned by the Debtor.

64.     The Transfer occurred within two years before the Petition Date.

65.     The Debtor received no value or less than reasonably equivalent value from the Defendant in exchange for the Transfer.

66.     The Debtor was insolvent at the time of the Transfer.

67.     The Transfer occurred during a time period when the Debtor was incurring substantial debts based on fraudulent activity.

68.     Nathan Fuller is not able to explain the dissipation of assets from Privvy.

## ACTUAL FRAUDULENT TRANSFER UNDER TEXAS LAW

69.     The Trustee incorporates paragraphs 1 through 59 as if set forth fully herein.

70.     The Transfer was made in violation of TEX. BUS. & COM. CODE ANN. § 24.001 *et seq.*, which the Trustee incorporates pursuant to 11 U.S.C. § 544.

71.     The Debtor made the Transfer with actual intent to hinder, delay, or defraud creditors.

72.     The Transfer was of interests in property held by the Debtor.

73.     The Transfer occurred within four years of the Petition Date.

74.     The Debtor received no value or less than reasonably equivalent value from the Defendant in exchange for the Transfer.

75.     The Debtor was insolvent at the time of the Transfer.

76.     The Transfer occurred during a time period when the Debtor was incurring substantial debts based on the fraudulent activity.

77.     Nathan Fuller is not able to explain the dissipation of assets from the Debtor.

78.     The claims of creditors who were defrauded by the Debtor predate the Transfer.

79.     Therefore, a creditor exists whose claim arose before or within a reasonable time after the occurrence of the Transfer for whom the Trustee can act.

## CONSTRUCTIVE TRUST

80.     The Trustee incorporates paragraphs 1 through 79 as if set forth fully herein.

81.     "When proceeds of a fraudulent transfer are used to purchase real property, other courts have found the imposition of a constructive trust an appropriate remedy under Section 550." *Samson v. Williams*, 658 B.R. 591, 607 (Bankr. D. Mont. 2024); *see also Teve Holdings Ltd. v. Jackson*, 763 S.W.2d 905, 908 (Tex. App.--Houston [1st Dist.] 1988, no pet.) (a constructive trust is awarded when it is unconscientious for the holder of legal title to retain and enjoy the beneficial interest in real property).

82.     Texas courts require three elements before applying the equitable remedy of a constructive trust: (1) actual fraud, (2) unjust enrichment of the wrongdoer, and (3) tracing to an identifiable res.  *See in re Monnig's Dep't Stores, Inc.*, 929 F.2d 197, 201 (5th Cir. 1991).

83.     The facts set forth in this complaint establish actual fraud.  At the time of the Transfer, Privvy was not operating as a crypto investment vehicle as Nathan Fuller had represented to investors.  Instead, new investor funds were being used to pay returns to old investors, purchase the Kerrville House in the name of the Defendant, and fund the gambling habits and lifestyle of the Defendant and Nathan Fuller.

84.     The Defendant and Nathan Fuller would be unjustly enriched if title to the Kerrville House remained in the Defendant's name.

85.     The Transfer was made to purchase the Kerrville House which is an identifiable res.

86.     Accordingly, the Trustee requests the imposition of a constructive trust on the Kerrville House and an order compelling the Defendant to convey title to the Kerrville House to the Trustee.

### CONSTRUCTIVE FRAUDULENT TRANSFER UNDER 11 U.S.C. § 548(a)(1)(B)

87.     The Trustee incorporates paragraphs 1 through 59 as if set forth fully herein.

88.     The Transfer is avoidable as a constructive fraudulent transfer under 11 U.S.C. § 548(a)(1)(B).

89.     The Transfer was a transfer of interest in property owned by the Debtor.

90.     The Transfer occurred within two years before the Petition Date.

91.     The Debtor received no value or less than reasonably equivalent value from the Defendant in exchange for the Transfer.

92.     The Debtor was insolvent at the time of the Transfer.

93.     The Transfer occurred during a time period when the Debtor was incurring substantial debts based on fraudulent activity.

## RECOVERY OF THE TRANSFER UNDER 11 U.S.C. § 550

94.     The Trustee incorporates paragraphs 1 through 93 as if set forth fully herein.

95.     Under § 550(a) of the Code, the Trustee can recover the Transfer or the value of the Transfer from "the initial transferee of such transfer or the entity for whose benefit such transfer was made." 11 U.S.C. § 550(a)(1).  Additionally, the Trustee can recover the Transfer or the value of the Transfer from "any immediate or mediate transferee of such initial transferee."  11 U.S.C. § 550(a)(2).

96.     The Defendant was the beneficiary of the Transfer.  The Trustee requests that the Court enter a judgment against the Defendant: (i) avoiding the Transfer; (ii) ordering the Defendant to immediately convey title of the Kerrville House to the Trustee, and (iii) awarding pre- and post-judgment interest, to the estate.

## CONSTRUCTIVE FRAUDULENT TRANSFER UNDER TEXAS LAW

97.     The Trustee incorporates paragraphs 1 through 59 as if set forth fully herein.

98.     The Transfer was made in violation of TEX. BUS. & COM. CODE ANN. § 24.001 *et seq.*, which the Trustee incorporates pursuant to 11 U.S.C. § 544.

99.      The Transfer was a transfer of interests in property owned by the Debtor.

100.    The Transfer occurred within four years of the Petition Date.

101.    The Debtor received no value or less than reasonably equivalent value from the Defendant in exchange for the Transfer.

102.    The Debtor was insolvent at the time of the Transfer.

103.    The Debtor intended to incur debts that would be beyond its ability to pay as such debts matured.

104.    The claims of creditors who were defrauded by Privvy pre-date the first Transfer.

105.    Therefore, a creditor exists whose claim arose before or within a reasonable time after the occurrence of the Transfer for whom the Trustee can act.

## RECOVERY OF THE TRANSFER UNDER TEXAS LAW

106.    The Trustee incorporates paragraphs 1 through 105 as if set forth fully herein.

107.    The Trustee seeks (i) the avoidance of the Transfer and (ii) the return of the value of the Transfer and/or money damages against Defendant pursuant to TEX. BUS. & COM. CODE ANN. § 24.008.

## ATTORNEY'S FEES

108.    The Trustee requests an award of his reasonable fees and costs pursuant to TEX. BUS. & COM. CODE ANN. § 24.013 and other applicable law.

<u>**REQUEST FOR PRE- AND POST-JUDGMENT INTEREST**</u>

109.    The Trustee seeks pre-judgment interest on the value of the Transfer from the date of transfer through the date of judgment at the rate of 5% per annum. The Trustee seeks post-judgment interest on all money damages awarded hereunder from the date of judgment until paid at the prevailing federal judgment rate.

<u>**PRAYER**</u>

Accordingly, the Trustee requests the Court to enter judgment as set forth above and to grant such other relief as is just.

**Dated: December 11, 2024.**

Respectfully submitted,

**Porter Hedges LLP**

By:    */s/ Aaron J. Power*
Aaron J. Power
State Bar No. 24058058
1000 Main Street, 36th Floor
Houston, Texas 77002
(713) 226-6000
(713) 228-1331 (fax)

**Counsel for Ronald J. Sommers, Trustee**